UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80525-CIV-HURLEY/HOPKINS

NEIL COLE

    Plaintiff,

v.

AMERICAN CAPITAL PARTNERS
LIMITED, INC., et al.

    Defendants.
_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon plaintiff's motion for summary judgment [DE # 106]. For the reasons given below, the court will grant plaintiff's motion in part and deny it in part.

### BACKGROUND

This is a common-law action for fraud, conversion, breach of contract, breach of fiduciary duty, and civil conspiracy. The facts given below are drawn from the pleadings and record evidence, and have been viewed in the light most favorable to the defendants as the non-moving parties. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

Plaintiff Neil Cole is the CEO of Iconix Brand Group, formerly known as Candie's, Inc. In March 2005, Cole was in the market for a personal loan. Cole contacted defendant Strategic Funding Partners, LLC, whose website advertised "stock loans" – loans under which the borrower puts up shares of stock as collateral. *See* Pl.'s Am. Compl. ¶ 14. Bruce Rich and Michael Rich, principals of Strategic Funding, sent Cole marketing materials titled "Understanding Stock Loans," advertising that an investor could receive "up to 90% of the loan-time market value of his shares . . . as a

non-callable and non-recourse loan." [DE # 109, Ex. B]. In late March or early April 2005, Bruce Rich and Michael Rich introduced Cole to defendant American Capital Partners Limited, Inc., a company in the business of stock loans. *See* Cole Aff. ¶ 3. Michael Rich sent Cole multiple emails assuring him that for any stock pledged as collateral for a loan, Cole would "maintain contractual ownership, voting rights, [and] dividend rights . . . ." [DE # 109, Exs. C, D]. Bruce Rich also assured Cole that his voting rights would be preserved, stating that he had participated in "over 100 million dollars in loans" with American Capital and had yet to encounter an unsatisfied client [DE # 109, Ex. F].

In April 2005, Cole and defendant American Capital entered into an agreement under which American Capital loaned Cole approximately $665,000, minus a $26,000 finder fee paid to Strategic Funding for referring Cole to American Capital, and under which Cole agreed to pledge as collateral two hundred thousand shares of Candie's, Inc. stock. *See* Pl.'s Am. Compl. Ex. A. Pursuant to the accompanying escrow agreement, Cole's shares were to be held by escrow agent and American Capital officer, defendant Joseph I. Emas. *See* Pl.'s Am. Compl. Ex. B. In June 2005, Cole and American Capital entered into another loan and escrow agreement, with similar terms, under which American Capital lent Cole $768,000 less a $30,720 fee paid to Strategic Funding, and Cole placed another two hundred thousand shares of Candie's, Inc. into defendant Emas' escrow account as collateral. *See* Pl.'s Am. Compl. Exs. C, D. The April and June loan agreements were both executed by Cole, on behalf of himself, and defendant C. Frank Speight, as President of American Capital. The accompanying escrow agreements were both signed by Cole, Speight and defendant Emas, as escrow agent.

In September 2005, American Capital notified Cole that the two loans had been assigned to

defendant Consolidated Financial Group. *See* Cole Aff. ¶ 14. Plaintiff claims that at the time he had not been made aware that defendants Timothy Ellis and C. Frank Speight, officers of American Capital, formed and controlled Consolidated Financial Group. *See* Mullaney Aff. Ex. 5. After the assignment, Cole continued to make timely loan payments. *See* Cole Aff. ¶ 17. In April 2006, Cole decided to prepay the balance of each of the two loans upon the conclusion of the first year of each loan's term. Cole notified Consolidated Financial, American Capital and Emas in writing of his desire to pay the loans in full [DE # 109, Ex. M]. Cole claims he received no response from the defendants, and that Consolidated failed to deposit his loan payment due April 1, 2006. *See* Cole Aff. ¶ 18. After several weeks of unsuccessful attempts to contact the lenders, Cole's attorney, Robert B. Stein, contacted the escrow agent, Joseph Emas. According to Stein's affidavit, defendant Emas indicated that he believed Cole had defaulted under either or both of the loan agreements, and that some of Cole's shares may have been released from escrow; but that he could not recall whether he had sent Cole a required notice of default, the particular failure of performance that constituted the alleged default, when the default occurred, how many shares had been released, and to whom or what entity the shares had been released. *See* Stein Aff. ¶ 3. Emas did not respond to a May 16, 2006 follow-up letter from Cole posing these questions. *See id.* ¶ 4. According to Cole, defendants had already sold the shares that were purportedly in escrow, and distributed the proceeds amongst themselves. *See* Pl.'s Am. Compl. ¶ 34. Cole alleges that what Emas had represented as an escrow account was really Emas' personal bank account, from which Emas directed the sale of the shares. *See id.* ¶ 36. Bank account statements obtained by plaintiff's attorney, Mary Ann Mullaney, show that almost immediately after Cole transferred the stock to Emas' account at Fordham Financial, Emas began selling the shares. *See* Mullaney Aff. Exs. 2, 3. Plaintiff alleges the proceeds of these

3

unlawful sales totaled approximately $2, 143, 337. *See* Pl.'s Am. Compl. ¶ 36.

According to bank account statements and Mullaney's affidavit, most proceeds from the stock sales were wired to a Wachovia account controlled by Emas, and then to a Bank of America account for defendant Dunhill Capital, Inc. - an entity for which defendant Speight also served as president. *See* Mullaney Aff. Exs. 7-9, 11, 12. Bank records show that the funds were subsequently transferred from Dunhill Capital's account to defendants T. Ellis Consulting, Inc., Strategic Funding and American Capital. *See id.* at Exs. 10 -15. T. Ellis Consulting, Inc. is controlled by defendant Timothy C. Ellis, who is also an officer of American Capital and director of Consolidated Financial. *See id.* at. Exs. 5, 6.

Financial records also show that defendants actually used the proceeds from the sale of Cole's stock to fund the April and June loans. In May 2005, proceeds of over $600,000 were transferred from Emas' Wachovia account to Cole's Chase Manhattan account, Mullaney Aff. Ex. 7, and in June 2005, Dunhill Capital transferred over $800,000 to Cole, *id.* at Ex. 12. In other words, Cole was borrowing funds generated from the sale of his own stock, while Cole believed the stock was being held in escrow as security for the loans.

On May 30, 2006, Cole filed suit in this court. Cole filed an amended complaint on November 6, 2006 [DE # 63]. Pretrial discovery was stayed multiple times because of a concurrent criminal investigation. *See* DE # 79, 87, 113. In September 2007, clerk's default was entered against defendants Dunhill Capital [DE # 93] and Consolidated Financial [DE # 95], and default judgments were later entered against these two defendants. *See* DE # 160, 161. On November 26, 2007, plaintiff moved for summary judgment [DE # 106]. Defendants Timothy Ellis, T. Ellis Consulting, Inc., Strategic Funding Partners, Bruce Rich, Michael Rich, Joseph Emas, American Capital, and

Frank Speight all filed responses to plaintiff's motion for summary judgment. On January 22, 2008, a hearing was held on plaintiff's motion for summary judgment. On February 11, 2008, this court issued an order reopening discovery until April 1, 2008, and permitted supplemental briefings on plaintiff's motion [DE # 155]. Defendants Strategic Funding, Michael Rich, Bruce Rich [DE # 157], and Joseph Emas [DE # 158] filed supplemental responses and memorandum in opposition to plaintiff's motion for summary judgment. On April 21, 2008, plaintiff filed a response to defendants' supplemental briefs [DE # 159].

## JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) because all defendants reside in Florida, and at least one defendant resides in the Southern District of Florida.

## DISCUSSION

### A.  *Standard of Review on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a

matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B. *Plaintiff's Motion for Summary Judgment*

The amended complaint asserts claims of fraud, conversion, and conspiracy against all defendants; breach of contract against American Capital and Emas; and breach of fiduciary duty against Emas.

#### 1. *Fraud*

The elements of common-law fraud are (1) a false statement of fact; (2) known by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the

representation; and (5) resulting damage or injury. *See Madness, L.P. v. DiTocco Konstruction, Inc.*, 873 So.2d 427, 429 (Fla. 4th DCA 2004).

As to defendants Strategic Funding, Bruce Rich and Michael Rich, Cole has produced substantial evidence showing that defendants made false statements of fact which they knew to be false and which were made in order to induce Cole to enter into the loan and escrow agreements, and that Cole did in fact rely on the statements in entering into the agreements. Strategic Funding promoted the company's ability to facilitate "stock loans" through its website, Pl.'s Mot. ¶ 14, and various marketing materials [DE # 109, Ex. B]. Emails from Strategic Funding and its principals, Bruce Rich and Michael Rich, told Cole that he would retain contractual ownership, voting rights, and dividend rights to the pledged stock under the loan agreements [DE # 109, Exs. C, D]. The emails, clearly designed to convince Cole to make the deal, also explicitly provided that there would be "no selling" of the pledged stock. *Id.* Furthermore, financial records submitted by plaintiff show that Strategic Funding profited handsomely from the unlawful stock sales, to plaintiff's damage. Bank records show that in May 2005 stock sale proceeds of over $75,000 were transferred from Dunhill Capital's account to an account for Strategic Funding, Mullaney Aff. Ex. 11., and the following month, over $90,000 were transferred to Strategic Funding's account, *id.* at Ex. 12. Both sums are well above the four percent "finder's fee" set forth in the April and June loan agreements.

To survive plaintiff's motion for summary judgment, defendants Strategic Funding, Bruce Rich and Michael Rich have produced no evidence to counter plaintiff's claim that he was the victim of a sophisticated fraud. Defendants did not attach any financial records or affidavits in their responses in opposition to plaintiff's motion for summary judgment. In their joint supplemental memorandum, defendants emphasize that because they were not parties to the stock loan agreements,

they cannot be held liable for misrepresentations in these agreements. *See* Def.'s Mem. Supp. Opp'n to Pl.'s Summ. J. 2. However, defendants have failed to provide any record evidence to rebut the email communications submitted by plaintiff that clearly show defendants' making false statements and assurances with respect to the loan agreements proposed by defendants' long-time business ally, American Capital. Nor did defendants provide any evidence to explain why Strategic Funding had proceeds from the stock sale transferred to its account.

Moreover, presumably because of the criminal investigation into this matter being conducted by the United States Attorney for the Southern District of New York, the individual defendants refused at their depositions to answer any substantive questions, invoking their Fifth Amendment right against self-incrimination. Defendants Bruce Rich, Michael Rich, Speight, Emas, and Ellis generally only answered questions regarding their name, address, and citizenship. *See* Pl.'s Mem. Supp. Summ. J. 4. This is more than just a failure of production on defendants' part. The invocation of the Fifth Amendment actually adds to the weight of the evidence favoring plaintiff because the court is permitted to draw an adverse inference in a civil case from a defendant's refusal to testify on self-incrimination grounds. *See Arango v. U.S. Dept. of the Treasury*, 115 F.3d 922, 926 (11th Cir. 1997).

The adverse inference drawn against the individual defendants may also be drawn against corporate defendants American Capital, T. Ellis Consulting, Inc. and Strategic Funding, because Speight, Ellis, and Bruce Rich and Michael Rich were acting in the scope of their employment by the respective corporate defendants when they engaged in the conduct they refused to testify about. *See RAD Serv., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986) (holding that the district court did not err in instructing the jury that it could draw an adverse inference against an

insurance company based on a managing employee's Fifth Amendment invocation). The court's primary concern in this situation must be "whether the adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *See Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1337 (S. D. Fla. 2007). When combined with the substantial record evidence provided by plaintiff, the court is satisfied that an adverse inference against both the individual defendants and the corporate defendants is warranted as trustworthy and justified under all the circumstances.

Thus, because Strategic Funding, Michael Rich, and Bruce Rich have provided no evidence contradicting plaintiff's allegations, and because the law permits the court to treat defendants' Fifth Amendment right invocation as evidence in plaintiff's favor, the court finds no genuine issue of material fact as to the fraud claim, and grants summary judgment in favor of the plaintiff with respect to these three defendants.

As to defendants American Capital and American Capital president Frank Speight, Cole has provided significant evidence showing that defendants made false representations in the April and June agreements in order to induce Cole to sign said agreements, and appropriate his shares. In support of these allegations, plaintiff has submitted copies of the two loan agreements, signed by Cole and defendant Speight, as well as the accompanying escrow agreements signed by Cole, Speight and Emas.

The agreements signed by Cole and Speight are both titled "Loan Agreement" and include terms whereby American Capital promises, upon full repayment of the loan, to return to Cole "all of the securities collaterally assigned hereunder by the Grantee [Cole] to the Grantor [American Capital] as security for such loan . . . .." *See* Pl.'s Am. Compl. Ex. A at ¶ 4(a). The defendant further

agrees "not to deal with the Securities in any fashion that would prevent or delay the return and re-delivery of all of the Securities to Grantee [Cole] . . .." *See id.* at ¶ 4(c). Contrary to the representations set forth in the loan agreements, financial records produced by plaintiff indicate that plaintiff's shares were sold almost immediately after being transferred to the escrow agent. *See* Mullaney Aff. Exs. 2, 3. When plaintiff sent defendants a letter notifying them of his desire to pay the loan in full, [DE # 109, Ex. M], defendants did not respond, *see* Cole Aff. ¶ 18. Financial records show that almost all proceeds from the stock sales were transferred to an account for Dunhill Capital – an entity for which Speight was also president. *See* Mullaney Aff. Exs. 7-9, 11; Pl.'s Am. Compl. ¶ 3. Funds from Speight's Dunhill Capital account were subsequently transferred to American Capital and other defendants. *See* Mullaney Aff. Exs. 10-15. Thus, it appears from the evidence that defendants intentionally made misrepresentations in the loan agreements for the purpose of acquiring Cole's shares.

Although defendants Frank Speight and American Capital have denied plaintiff's fraud claims, they have provided no evidence contradicting plaintiff's allegations. Considering plaintiff's documentary evidence in conjunction with the adverse inference that may be drawn against defendants, this court grants summary judgment in favor of the plaintiff as to the fraud claims against Speight and American Capital.

As to defendant Joseph Emas, there is also sufficient evidence to support plaintiff's allegations of fraud. The agreements submitted by the plaintiff that govern the collateral for the loans are each titled "Escrow Agreement." *See* Pl.'s Am. Compl. Exs. B, D. Signed by Cole, Speight and Emas, the escrow agreements recognize that American Capital and Cole are parties to the April and June loan agreements which are "collateralized by [Cole's] shares of common stock of Candies, Inc.

. ." and that Emas is responsible for holding and distributing the escrow shares "pursuant to the terms and conditions of the Loan Agreements." *See id.* at Ex. B ¶ 1. The escrow agreements required that upon receiving a claim of entitlement to the escrow shares from either Cole or American Capital, Emas would promptly notify the non-claiming party of the other's claim. *See id.* at Ex. B ¶ 2. Absent any objection by the non-claiming party, Emas would be permitted to release the shares. *See id.* at Ex. B ¶ 3.

Financial records submitted by plaintiff show that contrary to the terms of the escrow agreements, the stocks Cole pledged as collateral were sold by defendant Emas without notifying Cole or giving him opportunity to contest the sale. *See* Mullaney Aff. Exs. 2, 3. The records also show that cash was nearly simultaneously transferred to an account opened by Emas at Wachovia Bank. *See id.* at Exs. 2-4, 7. From there, the funds were transferred and distributed among all other defendants. *See id.* at Exs. 7-15. According to a sworn affidavit from Cole's attorney, Robert Stein, Emas indicated to Stein that Cole had defaulted, and that as a result some of Cole's shares may have been released from escrow. *See* Stein Aff. Ex. 3. Emas said he could not recall whether he sent Cole a notice of claim before releasing the shares, and Emas ignored a follow-up letter requesting further information on the release of the shares. *Id.*

From the above cited evidence, it appears that Emas, through the escrow agreements, intentionally misrepresented his role and duties as escrow agent in order to induce plaintiff to transfer stock into Emas' Fordham account. Based on plaintiff's overwhelming documentary evidence and an adverse inference against defendant, the court finds that plaintiff Cole is entitled to summary judgment as to the fraud claim against defendant Emas.

As to defendants Timothy Ellis and T. Ellis Consulting, the court will deny plaintiff's motion

11

for summary judgment for lack of corroborative evidence. Nothing in the evidentiary record suggests that these defendants made any false representations to Cole in order to induce him to turn over the shares. Although a negative inference may be drawn against both defendants due to Timothy Ellis' Fifth Amendment right invocation, this alone is not enough to support summary judgment in favor of plaintiff. *See Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991).

    2.    *Conversion*

In Florida, "[c]onversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *Estate of Villanueva ex rel. Villanueva v. Youngblood*, 927 So.2d 955, 959 (Fla. 2d DCA 2006).

As to defendant Emas, plaintiff has produced overwhelming evidence to show that Emas is liable for conversion under Florida law. Cole was entitled under the loan and escrow agreements to the return of his pledged stock once the loans were repaid. *See* Pl.'s Am. Compl. Ex. A. at ¶ 4(a). Bank records indicate, however, that Emas deprived Cole of his lawful right to possess the 400,000 shares of stock by selling them almost immediately after receiving them. *See* Mullaney Aff. Exs. 2, 3. On May 19, 2006, a representative for Fordham Financial informed Cole's attorney that the shares of stock pledged by Cole as collateral for the April and June loan agreements had been released from the escrow account "nearly a year ago." *See* Mullaney Aff. ¶ 3.

Florida law also explains that: "the essence of an action for conversion is not the acquisition of property by the wrongdoer, but rather the refusal to surrender the possession of the subject personalty after demand for possession by one entitled thereto." *Joseph v. Chanin*, 940 So.2d 483, 487 (Fla. 4th DCA 2006). Here, the evidence indicates that plaintiff made several attempts to repay the loan, and gain possession of his shares. *See* DE # 109, Ex. M; Cole Aff. ¶ 19. Defendants

avoided Cole's requests, presumably because Emas had unlawfully sold the stock that they were required to return to Cole upon repayment. *See* Cole Aff. ¶ 18. Defendant Emas has failed to produce any evidence contradicting the financial records and affidavits submitted by plaintiff. Accordingly, with respect to defendant Emas, the court will grant summary judgment in favor of the plaintiff on the conversion claim.

As to all other defendants, plaintiff's motion for summary judgment on conversion is denied. Although plaintiff has submitted evidence showing that the remaining defendants all received proceeds from Emas' unlawful sale of Cole's stock, nothing in the record shows the other defendants asserting a right of dominion over Cole's shares - only the proceeds from the sale thereof.

    *3.    Breach of Contract*

Plaintiff asserts breach of contract claims against American Capital and Emas. To succeed on a breach of contract claim, Cole must establish (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages. *See Brooks Tropicals, Inc. v. Acosta*, 959 So.2d 288, 292 (Fla. 3d DCA 2007); *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 575 (Fla. 4th DCA 2006).

As to American Capital, Cole has provided sufficient evidence that in fact defendant breached both loan agreements. American Capital has not disputed that the April and June loan and escrow agreements were valid contracts. American Capital argues primarily that Cole did not actually prepay the loan balances. *See* Def.'s Mem. Opp'n to Pl.'s Summ. J. 8. But the evidence shows that Cole could not prepay the loan balances because American Capital did not respond to any of Cole's multiple inquiries. *See* Cole Aff. ¶¶ 18, 19; DE # 109, Ex. M. Cole again attempted to contact American Capital when his April 2006 loan payment was not deposited. *See* Cole Aff. ¶ 19.

13

Defendant Speight, president of American Capital, told Cole that he would "look into it," but Speight never provided any information. *Id.* The above conduct violated American Capital's contractual obligation not to do anything that would "prevent or delay the return and re-delivery of all of the Securities to Grantee immediately upon repayment of the amount due under the Loan Agreement." *See* Pl.'s Am. Compl. Ex. A at ¶ 4(c). Because Cole's shares were instead sold and not returned, Cole suffered damages resulting from the loss of his stock.

Furthermore, under the escrow agreements, American Capital agreed that Cole could "examine the Escrow Shares at any time." *See* Pl.'s Am. Compl. Ex. B at ¶ 8(a)(I). However, when plaintiff's attorney contacted Fordham Financial on May 19, 2006 attempting to examine the status of the shares purportedly held in escrow, her request was denied. *See* Mullaney Aff. ¶ 3. The escrow agreements also required that the loan agreements not be assigned by American Capital or Cole "without the prior consent of the other party." *See* Pl.'s Am. Compl. Ex. B at ¶ 9(e). Contrary to this provision, in September 2005, American Capital notified Cole after-the-fact that the loans had been assigned to Consolidated Financial. *See* Pl.'s Am. Compl. ¶ 26. Based on the above evidence and on the adverse inference imputed against the defendant, the court grants summary judgment in favor of plaintiff on the breach of contract claim against American Capital.

As to defendant Emas, Cole has provided significant evidence showing that defendant breached the April and June escrow agreements. Emas does not dispute that he and Cole were parties to a valid contract. Emas flagrantly violated the Escrow Agreement by, among other things, failing to distribute a notice of claim to Cole before releasing the shares of stock held in the escrow account and releasing the stock in violation of the escrow agreement. *See* Pl.'s Am. Compl. Ex. B at ¶ 2. More obviously, as escrow agent, Emas' main responsibility was to "hold the Escrow Shares" for the

purpose of securing Cole's obligation under the loan agreements. *See* Pl.'s Am. Compl. Ex. B at ¶ 1. This he plainly failed to do.

Emas was also bound by the agreement's provision that allowed plaintiff to examine his shares at any time. *See* Pl.'s Am. Compl. Ex. B at ¶ 8(a)(I). On May 21, 2006, after Fordham Financial refused to let Cole examine his escrow shares, Cole's attorney faxed a letter to Emas advising that Cole was exercising his right to examine the shares pledged as collateral. *See* Mullaney Aff. ¶ 6. Emas did not respond, and plaintiff was forced to obtain subpoenas in order to obtain information on his shares. Cole clearly suffered damages from Emas' breach because Cole is left without either his stock or any of the proceeds from its sale.

In his supplemental response, defendant Emas argues that he is not liable for breach of contract, or any other claim, because the April and June transactions between Cole and American Capital were not loans, but stock sales. Def.'s Supp. Resp. to Pl.'s Summ. J. 2, 3. Defendant contends that because Cole "divested himself of all ownership interest in the stock," Emas was permitted to "follow the instructions of ACP [American Capital], as the sole owner of the stock." *See id.* at ¶ 14. To support his argument, defendant relies on the "Irrevocable Stock and Bond Power" documents attached to the April and June loan agreements which state that Cole "does hereby sell, assign, and transfer all his rights, title and ownership [in his stock] to: American Capital." *See* Pl.'s Am. Compl. Ex. A. Defendant further argues that because the "Stock Power" puts the nature of the transactions in dispute, summary judgment is improper.

The court concedes that where the language of an agreement is reasonably susceptible to more than one interpretation, then an issue of fact is presented as to the parties' intent and such an issue of fact may not be resolved by summary judgment. *See Commercial Capital Res., LLC v.*

15

*Giovannetti*, 955 So. 2d 1151, 1153 (Fla.3d DCA 2007); *see also Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir.1996); *Hoffman v. Terry*, 397 So.2d 1184, 1184 (Fla..3d DCA 1981). However, the preliminary question as to whether an ambiguity exists in a contract is to be determined by the court as a matter of law. *See Maccaferri*, 91 F.3d at 1439; *Orkin Exterm. Co. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir.1988); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 465 (5th Cir. 1967); *United States v. Northern Pac. Ry. Co.*, 188 F.2d 277, 280 (8th Cir.1951); *Whiting Stoker Co. v. Chicago Stoker Corp.*,171 F.2d 248, 251 (7th Cir.1948). And because "it is a cardinal rule" in the construction of contracts that the intention of the parties be ascertained "from a consideration of the entire agreement," and because "it is not enough to simply look to an isolated phrase or paragraph of the contract," *Florida v. Wesley Constr. Co.*, 316 F.Supp. 490, 495 (S.D.Fla.1970), this court finds that the agreements in question, viewed in their entirety, unambiguously describe loans collateralized by shares of stock.

As plaintiff points out, the loan agreements provide that title to the shares passes to American Capital only in the event of Cole's default. *See* Pl.'s Am. Compl. Ex. A at ¶ 5(b) ("If the Grantee defaults in any terms and conditions set forth in this Agreement, the Grantee will have no further rights, claims or interest in the stock used to collateralize this loan.") More obviously and perhaps more importantly, characterizing the transaction as a sale of Cole's stock rather than a loan secured by Cole's stock is utterly inconsistent with everything else about the transaction. The principal agreements between Cole and American Capital are each titled "Loan Agreement," and refer throughout to the "loan" from American Capital to Cole. Cole made payments to American Capital on the loans, conduct which would make no sense if the transaction were a sale. Finally, had the transaction really been a sale, there would have been no need to transfer Cole's stock into an escrow

account. Thus, construing the contract as a whole, *Jones v. Warmack*, 967 So.2d 400, 402 (Fla. 1st DCA 2007); *Haddad v. Hester*, 964 So.2d 707, 710 (Fla. 3d DCA 2007); *Felder v. Hull*, 953 So.2d 621, 622 (Fla. 4th DCA 2007), the court finds that the parties' agreement is plainly one for a loan secured by stock, rather than the sale of stock as defendant Emas contends.

Therefore, based on the above cited evidence against Emas, and the negative inference drawn from the defendant's assertion of the Fifth Amendment, the court grants summary judgment in favor of plaintiff on the breach of contract claim against Emas.

### 4. Breach of Fiduciary Duty

Cole alleges that Emas breached his fiduciary duty as an escrow agent. Escrow agents are fiduciaries to the principals of an agreement creating the escrow. *See The Florida Bar v. Joy*, 679 So.2d 1165, 1167 (Fla. 1996) ("The relationship established . . . involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties."). An escrow agent must exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property in strict accordance with the principals' agreement. *United American Bank of Cent. Fla., Inc. v. Seligman*, 599 So.2d 1014, 1016 (Fla. 5th DCA 1992).

The court has concluded above that Emas breached the escrow agreement. Moreover, he did so intentionally and cynically. Thus, Emas obviously did not exercise "reasonable skill and ordinary diligence" in performing the duties of an escrow agent. The court will therefore grant summary judgment for plaintiff on the breach of fiduciary duty count.

### 5. Civil Conspiracy

Plaintiff has alleged a civil conspiracy among the defendants to unlawfully appropriate his shares of stock. The elements of a civil conspiracy are: (1) a conspiracy between two or more parties;

(2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) resulting damage to the plaintiff. *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006).

As to all the defendants, it appears that there is no genuine issue of material fact as to any of the above elements. The above evidence has shown that defendant Strategic Funding, through defendants Bruce Rich and Michael Rich, along with Frank Speight, president of American Capital, and Joseph Emas, escrow agent and officer of American Capital, persuaded Cole to enter into the stock loans, and Emas unlawfully converted the shares of his stock by selling them. The proceeds were then transferred from Emas' escrow account at Fordham Financial to Emas' Wachovia account, and subsequently distributed among the interconnected web of defendants. The financial records and affidavits showing that the defendants committed the above acts leads to the unmistakable conclusion that all defendants agreed to participate in the overall scheme to defraud the plaintiff. And more than just committing an overt act, the defendants succeeded in achieving the goals of their conspiracy, to plaintiff's damage.

Based on the financial records and affidavits submitted by plaintiff, the lack of opposing evidence produced by the defendants, and the negative inference against them, the court finds it reasonable to conclude that the defendants all conspired to unlawfully appropriate Cole's shares of stock in order to have them sold, and derive a profit. Accordingly, the court will grant summary judgment in favor of the plaintiff on the civil conspiracy claim.

## CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's motion for summary judgement [DE # 106] is **GRANTED IN PART**

Case 9:06-cv-80525-DTKH Document 173 Entered on FLSD Docket 08/04/2008 Page 19 of 19

Order Granting in Part Plaintiff's Motion for Summary Judgment
Cole v. American Capital Partners Limited, Inc. et al.
Case No. 06-80525-CIV-HURLEY/HOPKINS

and **DENIED IN PART** as follows:

a. Summary judgment in favor of the plaintiff is granted on Count I as to defendants Strategic Funding, LLC, Bruce Rich, Michael Rich, American Capital Partners Limited, Inc., C. Frank Speight, and Joseph I. Emas.

b. Summary judgment in favor of the plaintiff is granted on Count II as to defendant Joseph I. Emas.

c. Summary judgment in favor of the plaintiff is granted on Counts III, IV, V and VI.

d. Plaintiff's motion for summary judgment is **OTHERWISE DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 2ND day of August, 2008.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*