UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.06-80525-Civ-Hurley/Hopkins

NEIL COLE,

    Plaintiff,

vs.

AMERICAN CAPITAL PARTNERS LTD., INC.,
C. FRANK SPEIGHT
JOSEPH I. EMAS,
CONSOLIDATED FINANCIAL GROUP,
DUNHILL CAPITAL, INC,
T. ELLIS CONSULTING, INC.,
TIMOTHY ELLIS,
STRATEGIC FUNDING PARTNERS, LLC,
BRUCE RICH, and
MICHAEL RICH,

    Defendants.
_____/

## REPORT AND RECOMMENDATION AS TO VERIFIED MOTION TO DISSOLVE WRIT OF GARNISHMENT FILED BY DEFENDANT BRUCE RICH  (DE 299)

**THIS CAUSE** has come before the undersigned upon an Order referring a Verified Motion to Dissolve Writ of Garnishment filed by Defendant Bruce Rich.  (DEs 299, 301). Plaintiff filed a Response on November 23, 2009.  (DE 307).  On December 3, 2009, this Court conducted an evidentiary hearing, where Defendant Bruce Rich and Plaintiff appeared.  After considering the evidence adduced at the hearing, as well as the pleadings filed by the parties, this Court **RECOMMENDS** that the Court **GRANT** the Verified Motion to Dissolve Writ of Garnishment.  (DE 299).

## BACKGROUND

Plaintiff commenced this action with the filing of a complaint and Emergency Motion for

Temporary Restraining Order, for an Order Granting Expedited Discovery, and for an Order directing Defendants to show cause why a Preliminary Injunction should not issue.  (DEs 1, 3).  According to Plaintiff, Defendants Strategic Funding Partners, LLC, and its purported principals, Bruce Rich ("Rich), and Michael Rich, introduced Plaintiff to Defendant American Capital Partners Ltd. ("American Capital"), a business in the market of stock loan transactions.  (DE 63, pgs. 2, 3).  Plaintiff thereafter executed two loan agreements with American Capital and Joseph I. Emas ("Emas"), pursuant to which Plaintiff pledged numerous shares of stock for placement in escrow accounts at Fordham Financial Management, Inc.  (DE 63, pgs. 4-5).  American Capital and Emas reassigned the loans to Defendant Consolidated Financial Group ("Consolidated Financial") without prior consent from Plaintiff.  (DE 3, pgs. 4-5).  Emas served as the escrow agent for Plaintiff's accounts.  (DE 48, pg. 2).

On an unspecified date, Plaintiff attempted to repay the balance of one of the loans, and was informed by Emas that he had defaulted on the loan.  (DE 3, pg. 6).  After being unable to contact Emas for further discussion of the issue, Plaintiff commenced the instant action to (1) compel Defendants to provide a full and complete accounting of all activity with respect to the pledged shares of stock and to otherwise prohibit Defendants and their agents from transferring, selling, or otherwise disposing of the shares of stock; or, (2) compel the removal of Emas as escrow agent and appoint an independent trustee as escrow agent, to compel the transfer of any shares of stock remaining in the possession of Defendants to the escrow account, and to prohibit the escrow agent from releasing any additional shares of stock.  (DE 3, pgs. 3-4).  Plaintiff's amended complaint asserted state law claims of fraud, conversion, conspiracy against all Defendants, breach of contract against American Capital and Emas, and breach of fiduciary duty

2

against Emas. (DE 63, pgs. 11-17).

Progress of the case was delayed several times because of pending criminal investigations. (DEs 79, 97, 113). Default Judgments were entered as to two of the named Defendants, Dunhill Capital and Consolidated Financial. (DEs 160, 161). In August of 2008, the District Court granted in part Plaintiff's Motion for Summary Judgment. (DEs 173, 177). In the Order, Plaintiff obtained partial summary judgment in his favor, as follows: (1) against Defendants American Capital, Speight, and Emas on the claims of fraud; (2) against Emas on the claims of conversion, breach of contract, and breach of fiduciary duty, and, (3) against all Defendants on the claim of civil conspiracy. (DE 173, pgs. 9-19). The Court thereafter granted Plaintiff's Motion to Dismiss the remaining claims, and entered Final Judgment in favor of Plaintiff, in the amount of six million, five hundred ninety-five thousand, four hundred twelve dollars and fifteen cents ($6,595,412.15), in June of 2009. (DEs 181, 182, 196, 197, 307). Speight and Emas filed a notice of appeal in July of 2009. (DEs 198, 199).

Post judgment discovery commenced on July 31, 2009. (DEs 207-218). Plaintiff began filing motions for writ of garnishment in September of 2009. (DEs 236-238, 241-244). On October 15, 2009, Plaintiff issued a writ of garnishment upon Bank of America, N.A. (DE 307, pg. 2). Bank of America served its Answer to the writ on or about October 19, 2009, indicating that it may be indebted to Rich with regard to a bank account held in the names of "Bruce Rich, Pamela Rich, and Dylan Rich," and with regard to a safe deposit box held in the names of "Bruce & Anita Rich." (DE 307, pg. 2). The instant Verified Motion to Dissolve Writ of Garnishment by Bruce Rich followed on November 12, 2009. (DE 299). Plaintiff filed its response on November 23, 2009. (DE 307).

**DISCUSSION**

Rich's Verified Motion is filed on behalf of Rich, his wife, Pamela Rich, their minor son, Dylan Rich, and his mother, Anita Rich. (DE 299, pg. 1). In the Motion, Rich claims that (1) he is the head of household, and that the writ of garnishment was served on the garnishee, Bank of America, N.A. on October 15, 2009, for a bank account listed as xxxxxxxx1841. (DE 299, pg. 1). Rich contends that such bank account is owned by his minor son, Dylan, that Rich and his wife Pamela are merely custodial signatories to the account, and that all of the money contained therein, which amounts to three hundred thirty-four dollars and seventeen cents, ($334.17), belongs to his minor son. (DE 299, pg. 1). Rich also notes that a safe deposit box numbered xxxxxxxx1220 is improperly listed in the names of Bruce Rich and his mother, Anita. (DE 299, pg. 1). Rich contends that the box is actually owned by Anita Rich, and another son, Mark Rich, and that Bank of America is unable to produce any documents to show that the safe deposit box is held under any other names besides those of Anita Rich and Mark Rich. (DE 299, pg. 1).

In response to the motion, Plaintiff argues generally that Rich has failed to provide any legal or factual basis for the motion. (DE 307, pg. 2). More specifically, Plaintiff notes that Rich's Verified Motion fails to comply with the relevant Florida statutes, Fla. Stat.§ 77.07 and 77.16, in that (1) Anita Rich has failed to make an affidavit as to the ownership of the safe deposit, as required by section 77.16; (2) the motion fails to allege that any of Plaintiff's allegations are untrue, as required by section 77.07(2); (3) if the accounts and safe deposit box are held as joint tenancies with the right to survivorship, they are subject to garnishment; and, (4) Rich's claim for the head of household exemption is inconsistent with his contention that he does not have an ownership interest in the account or safe deposit box. (DE 307, pgs. 2-4).

4

## THE EVIDENTIARY HEARING

At the hearing held on December 3, Rich, *pro se*, appeared, as did counsel for Plaintiff. Rich offered into evidence an affidavit executed by his mother, Anita Rich, wherein she testified that (1) the safe deposit box numbered xxxxxxxx1220 is improperly listed in the names of Rich and Anita Rich; (2) the safe deposit box is actually held in the names of Anita Rich and Mark Rich; and, (3) neither she nor Mark Rich are judgment debtors of Plaintiff. (Defendant's exhibit 1). Rich also testified that the bank documents associated with the acquisition of the safe deposit box show that the box was initially acquired by Anita Rich, Mark Rich, and Robert Rich.[1] Finally, although Rich admitted on cross examination that a page contained in Plaintiff's exhibit number 1 lists his name, purportedly linking him to the safe deposit box, Rich nevertheless contended that he does not know where the document originated from, and noted that the document is undated and could have been generated by anyone at any time.

With regard to bank account listed as xxxxxxxx1841, Rich testified that he opened the account opened for the benefit of his minor son, Dylan, for Dylan to save money that he received for birthdays, Christmas, and Hanukkah. Rich testified that he and his wife only signed their names when the account was opened, because as a minor, his son was not legally permitted to open the account by himself. Although Rich admitted, on cross examination, that his name and social security number appear on the account documents, Rich contended that the only transactions evidenced in the bank records are a series of twenty dollar ($20.00) and thirty dollar ($30.00) deposits, which illustrates that the account is in fact being used as a birthday and holiday savings account by his son. Rich emphasized that he has no ownership interest in any of

---

[1] Such documents were subsequently entered into evidence as Plaintiff's exhibit 1.

the funds in the account.

Plaintiff argued that the court must presume the funds in the safe deposit box and account are owned by Rich, and are held as joint tenancies with the right to survivorship, which can be garnished. Plaintiff also argued that because Rich's verified motion is not accompanied by an affidavit with regard to the bank account, Rich has failed to show that he does not own the funds in the account.

In rebuttal, Rich contended that his son's un-notarized signature appearing in the Verified Motion which was originally filed with the Court, (DE 299), is enough to show that Rich does not own the funds in the account, and that he met his burden of proving that he does not own the contents of the safe deposit box.

## **DISCUSSION**

In Florida, garnishment procedures are governed by Chapter 77 of the Florida statutes. *See Cadle Co. v. Pegasus Ranch, Inc.*, 920 So. 1276, 1278 (Fla. Dist. Ct. App. 2006).[2] According to section 77.041, upon application for a writ of garnishment, the Clerk of court is required to provide a specific notice to any individual defendant. *See* Fla. Stat. 77.041 (2009). In response to the writ, an individual defendant may then file a notarized "Claim of Exemption and Request for Hearing" form, indicating the basis for the exemption. *See Id*. After the defendant files the exemption form, the court should hold a hearing "as soon as is practicable to determine the validity of the claimed exemptions." *Id*. Pursuant to Fla. Stat.§ 77.07(1) (2009), upon the filing of a motion, a defendant "may obtain the dissolution of a writ of garnishment, unless the

---

[2] Florida's procedures for aid of execution applies. *See* Fed. R. Civ. P. 69 (2009); *Bernal v. All American Investment Realty, Inc.*, No. 05-60956, 2009 WL 586010, *4 (S.D. Fla. Mar. 6, 2009) (*citing* Fed. R. Civ. P. 69).

6

petitioner proves the grounds upon which the writ was issued . . ." Judgement debtors may obtain dissolution of a writ of garnishment if they establish that the funds are exempt from garnishment under state or federal law. *See Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 (11th Cir. 1999). Either the defendant or "any other person having an ownership interest in the property" may move to dissolve a writ of garnishment. *Rudd v. First Union Nat'l Bank of Florida*, 761 So. 2d 1189, 1191 (Fla. Dist. Ct. App. 2000) (*citation omitted*). Where a person other than the garnishee claims ownership of funds or property, such person is required to submit an affidavit to that effect. *See* Fla. Stat.§ 77.16(1) (2009) ("If any person other than defendant claims that the debt due by a garnishee is due to that person and not to defendant, or that the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to the effect, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived.")

Where a party claims an exemption, the burden of proof generally falls on the party claiming entitlement to such exemption. *See Cadle Co.*, 920 So. 2d at 1277. *See also Beal Bank, SSB v. Almand and Assocs.*, 780 So. 2d 45, 52-59 (Fla. 2001) (providing that debtor has burden of proof where no presumption of tenancy by entireties arises) (*citations and footnotes omitted*); *Bernal v. All American Realty, Inc.*, No. 05-60956, 2009 WL 586010, *1-*7 (S.D. Fla. Mar. 6, 2009) (noting that movant had burden of showing by preponderance of the evidence that all or part of the money contained in the account was not subject to garnishment because it did not belong to him).

Although property which is held jointly by a married couple is presumed to be held in a tenancy by the entireties, which is not subject to garnishment, no such presumption applies to

7

property held in a joint tenancy with the right to survivorship. *See Beal Bank, SSB v. Almand*, 780 So. 2d 45, 52-59 (Fla. 2001) (comparing tenancy by the entireties to joint tenancy with right of survivorship in context of bank accounts; providing that debtor has burden of proof where no presumption of tenancy by entireties arises) (*citations and footnotes omitted*); *Bernal*, 2009 WL 586010 at *1-*7 (discussing Florida law with regard to writs of garnishment and joint bank accounts). Rather, property held as joint tenants may be attached by the creditor of one of the joint tenants in order to satisfy the debt of the co-tenant. *See Beal Bank*, 780 So. 2d at 53 (" . . . if property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt.") (*citation omitted*). *See also Bernal*, 2009 WL at *5 (noting that "funds held in a joint account can be garnished by the creditor of one of the joint account owners to the extent of the debtor's ownership of the funds.") (*citing Mathews v. Cohen*, 382 B.R. 526, 530 (M.D. Fla. 2007)).

"[F]or garnishment purposes, funds on deposit in a financial institution are presumed to belong to the person or entity named on the account." *Bernal,* 2009 WL 586010 at *4 (*citing Thomas J. Konrad & Associates, Inc. v. McCoy*, 705 So. 2d 948, 949 (Fla. Dist. Ct. App. 1998); *Ginsberg v. Goldstein*, 404 So. 2d 1098, 1099 (Fla. Dist. Ct. App. 1981). Nevertheless, such presumption is subject to the right of the account holders to rebut that presumption "upon a sufficient showing." *Postnet Int'l Franchise Corp. v. R&B Central Enters., Inc.*, No. 6:08-cv-00106-22-DAB, 2009 WL 453413, *3 (M.D. Fla. Feb. 23, 2009) (concluding that defendants abandoned their objection to writ of garnishment purportedly aimed at accounts held by an eight year old child because the defendant failed to appear at hearing).

Where an account is owned jointly, and not all of the joint owners are judgment debtors, the court must determine the ownership interest of the judgment debtor. *See Bernal*, 2009 WL 586010 at *4 (noting that the court was required to determine the judgment debtor's interest in the finds of the accounts which the judgment debtor held as joint tenants with his brothers) (*quoting Antuna v. Dawson*, 459 So. 2d 1114, 1117 (Fla. Dist. Ct. App. 1984) ("before a final judgment authorizing the judgment creditor to reach the funds held by the garnishee is entered, the interests [of the joint depositor] in the funds should be conclusively determined and the applicable law applied thereto.") *See also Beardlsey v. Admiral Ins. Co.*, 647 So. 2d 327, 329 (Fla. Dist. Ct. App. 1994) (noting that where an account contains commingled funds, some of which may be exempt from garnishment, the court should attempt to determine what portion of the funds are not exempt). If the judgment debtor fails to establish that the funds in the account do not belong to him, garnishment should be permitted. *See Bernal*, 2009 WL 586010 at *4-*5 (finding that creditor was entitled to final judgment of garnishment on accounts which were held by defendant as co-tenant with his brother because (1) the co-tenants of the accounts failed to assert any ownership over the funds in the accounts, despite being provided with notice of the proceedings; and, (2) the judgment creditor admitted that the balance of one of the accounts belonged to him).

This Court concludes that Rich has met his burden of showing that he has no ownership interest in either the safe deposit, or the funds in the bank account. Considering the safe deposit box first, this Court notes that the documents entered into evidence as Plaintiff's exhibit 1 show that the account for the safe deposit box was opened by Anita Rich, Robert Rich, and Mark Rich; and, (2) the opening documents do not contain any reference to Defendant Bruce Rich

9

whatsoever.  Moreover, the only document which purports to link Defendant Bruce Rich to the safe deposit box, also contained in Plaintiff's exhibit 1, is of little evidentiary value, because the document is undated, untitled, and does not contain any bank letterhead or other official insignia of the bank.  In light of such evidence and the affidavit of Anita Rich, this Court **RECOMMENDS** that the District Court **GRANT** Rich's Verified Motion to Dissolve Writ of Garnishment, as to the safe deposit box numbered xxxxxxxx1220 .  (DE 299).

Turning now to the bank account listed as xxxxxxxx1841, Rich's testimony also shows that he has no ownership interest in the funds contained in the account.  Although Rich is listed as one of the account holders, and is therefore presumed to be an owner of the funds in the account, *see Bernal*, 2009 WL 586010 at *4, Rich testified unequivocally that he only signed the account documents because his minor son was not legally permitted to sign for the account in his own name, and that all the money in the account belongs to his son, and his son alone.  Such testimony has not been refuted by Plaintiff.

A review of the bank statements associated with the bank account shows that (1) the account was opened on August 21, 2008, with a deposit of one hundred dollars ($100.00) as a regular savings account; (2) none of the boxes for "individual," "joint account with survivorship," or "tenants by the entireties" were checked; (3) no ATM cards were issued for the account; (4) interest was to be reported to Pamela Rich; (5) most of the monthly bank statements reflect only the addition of interest to the balance; and, (6) other bank statements reflect deposits in the amount of forty-three dollars and seventy-five cents ($43.75), one hundred twenty-six dollars and twenty-three cents ($126.23), one hundred twenty-three dollars and ninety-one cents ($123.91), fifty dollars and three cents ($50.03), and one hundred dollars and one cent ($100.01).

(Plaintiff's exhibit 2). The records show no withdrawals. (Plaintiff's exhibit 2). Such evidence is consistent with Rich's claim that the account is used only as a savings account for his minor son.

At the hearing, Plaintiff has argued that Rich's failure to enter into evidence an affidavit prepared by his son to establish his son's ownership of the finds is fatal. This Court notes that Florida law requires a person claiming ownership of the property to submit an affidavit to that effect. *See* Fla. Stat.§ 77.16(1) (2009). However, this Court was unable to find any case supporting Plaintiff's contention, nor has Plaintiff provided any to that effect.

Moreover, this Court is satisfied, in light of the evidence, in conjunction with this Court's review of the bank statements, that Rich has met his burden of establishing that he has no ownership interest in the funds contained in the account. The instant case is unlike *M.A. James v. Commercial Bank at Apopka*, 310 So. 2d 399, 399 (Fla. Dist. Ct. App. 1975), where a court rejected the testimony of the judgment debtor and his eighteen (18) year old daughter as to the ownership of funds contained in a bank account as "unworthy of belief." Notwithstanding the fact that the judgment debtor and his daughter testified that the judgment debtor had no interest in funds which were held in an account solely controlled by the daughter, the court found such testimony incredible in light of the fact that other evidence showed that the daughter opened the account only a few months after entry of final judgment against her judgment-debtor father, and for the ostensible purpose of running the same auto sales business as her father. *See M.A. James*, 310 So. 2d at 399. Just as the court in *M.A James* found that other evidence in the case supported its conclusion as to the ownership of the funds in the account, so this Court does as well. As noted by the court in *M.A. James*, 310 So. 2d at 399, "[t]his was a factual issue."

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** Rich's Verified Motion to Dissolve Writ of Garnishment as to the bank account listed as xxxxxxxx1841.  *See Bernal*, 2009 WL 586010 at *5 (granting final judgment of garnishment as to account ending in 5761 because Mr. Hussain testified that he shares the account with his brother, and that the balance belonged to him; also grating final judgement of garnishment as to account ending in 1499 because Mr. Hussain failed to meet burden of proving by a preponderance of the evidence that the money contained therein was not subject to garnishment because it did not belong to him).

.

## RECOMMENDATION TO THE DISTRICT COURT

In conclusion, this Court **RECOMMENDS** that the District Court **GRANT** Bruce Rich's Verified Motion to Dissolve Writ of Garnishment.  (DE 299).


## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation.  *See* Statutory Time-Periods Technical Amendments Act of 2009, H.R. 1626, sec. 6, amending 28 U.S.C. § 636(b)(1) to provide that " . . . within fourteen days  after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.").  *See also* Fed. R. Civ. P. 72(b) (2009) ("Within 14 days after being served with a copy of the recommended disposition, a party may

serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy.") Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** in Chambers this 14 day of December, 2009, at West Palm Beach in the Southern District of Florida.

*/s/ James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record